**In the
United States District Court
For the
Northern District of Illinois**

----------------------------------------------------------------------------------------------

**Clint Krislov and Michael Powers**
     **V**
**Cook County Officers Electoral Board**
**Hon. Karen A. Yarbrough, by Sisavanh Baker**
**Hon. Kimberly Foxx, by Jessica M. Scheller, and**
**Hon. Dorothy Brown, by Meredith Hammer;**
----------------
      **With Service also on Objectors: Maureen Barry,**
          **Frank Hawkins, and Mark Thompson**

----------------------------------------------------------------------------------------------------

# Complaint

Clint Krislov, and Michael Powers, in this Complaint, challenge the Cook County Election Board's decision ordering Krislov's name removed from the March 17, 2020 election ballot for nomination as the Democratic Candidate for the open seat on the Illinois Supreme court.

## JURISDICTION AND VENUE

1.   This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution and applicable State law. This court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) for the federal claim and over the State law claim by 28 U.S.C. §1367(a) (Supplemental Jurisdiction over other claims that are so related that they form part of the same case or controversy).  Venue is proper under 28 U.S.C. § 1391(b). Most of the events giving rise to the claims asserted herein occurred here, and most parties live within or are affiliated with this District.

**FACTS**

2.     Krislov is a candidate for the Democratic nomination for the Illinois Supreme Court in the primary election scheduled for March 17,  2020.  Powers is one of circulators and the 9,555 voters who signed petitions supporting Krislov's candidacy for the March 17, 2020 primary election.

3.     In compliance with Illinois election laws, Krislov submitted 9,555 signatures of voters supporting his candidacy.  Krislov's signature petitions were challenged by  objectors funded by one of his opponents.

4.     The objectors challenged thousands for signatures and registration.  In the process, which occurs over a very short time, the challengers succeeded in challenging    4,601 signatures, leaving 4954 valid, or 108 short of the 5,050 required signature.

5.   Krislov challenged the process used in Cook County, (i) in which a questionable database was used, with mere photocopied signatures, rather than originals, (ii) in a process by which minimally trained evaluators are forced to make evaluative examination decisions in very short order, (iii) without objective standards, and (iv) without consideration for the actual statistical margins of error.  The hearing officer and the defendant Hearing Board, both rejected Krislov's efforts to challenge this process, as not assertable against the hearing officer or the Board.  Indeed, the Board rejected as well, Krislov's offer to show that the minimum margin of error rate for Professional Document Examiners is at least 2.97%, 3.4%  to 6.97%, plus or minus, (the error rate for personnel such as do the evaluation for Cook County is actually plus or minus 19%)..

6.     Thus, considering even the most stringent margin of error for Professional Document Examiners, Krislov must be regarded as submitting the necessary 5,050 signatures to secure his place on the ballot, such that he and his supporters have been deprived of their First

Amendment rights of ballot access.  See: Krislov v Rednour,     (7ᵗʰ Cir. 2000).

**7.    A.    First Amendment Protection.**

8.    Access to a place on the ballot is a substantial right that should not be denied lightly. *Welch v. Johnson*, 147 Ill.2d 40, 56 (1992); see also *Lyons MVP Party v. Lyons, Illinois, Municipal Officers Electoral Board*, 407 Ill.App.3d 1004, 1007 (2011) and *Samuelson v. Cook County Officers Electoral Board*, 2012 IL App (1st) 120581, ¶ 45.

9.    The Illinois Supreme Court has held that "concepts of due process apply to administrative hearings (including electoral board hearings)." *Girot v. Keith*, 212 Ill.2d 372, 818 N.E.2d 1232, 1237 (2004).   See also *Krislov v Rednour*,   226 F.3d 851  (7ᵗʰ Cir.  2000) cert. den. ballot access restriction could not survive strict scrutiny because it was not narrowly tailored to serve any compelling interest.  Similarly here, the process here, for its lack of objectivity and reliability, cannot survive to eliminate a candidate, especially one whose accepted signatures are within 1-2% of the required number.

**10.    B.    Bases for Challenging the Legitimacy of the Board's Actions.**

**11.    1 Defects in the database used**

12.    **The images used are visually deficient, compared with original signatures.** Further complicating the review, digitized signature images are shown on a computer screen rather than the original voter's signature, which is then compared to a scanned and printed *copy* of the original petition sheets.  Being a government entity, the computer screens are neither large nor high resolution by any stretch.

13.    This electoral board chose to use a photocopy of the original petition for its review,

rather than providing the original ink-signed petition sheets, as do other electoral boards (such as the Chicago Electoral Board). The original petition sheets have (at all relevant times) been in the custody of this Electoral Board, and are part of the electoral board's file. The original was available at all status hearings, so it is perplexing why the original petition sheets were not used at the most important stage – the review of voter signatures.

**14.    II.  The Invalid Process:  The "records examiners" have little training, no special expertise, and lack any objective standard, or metric, to be applied in reviewing signatures**.  The justification that signature review is just a "judgment call" shows that there is no standard of application. No supervisors reviewed the process for consistency, or provided corrective feedback in order achieve uniformity.

15.    There neither was, nor is, any publicly disclosed objective "standard" for review of signatures; and indeed, the review varied between each of the staff that was assigned to different stations, and/or were replaced at such stations.  No document defined whether or not nicknames, or initials, were valid for full first names.  Indeed, the stated purpose of the exercise is to confirm that the signature is likely to be that of the relevant person, not whether he or she signed exactly the way he or she signed on a voter registration card.  Thus, adding to the certainty that a person's signature changes over time, and the reality that a rushed signer may have signed with only a nickname, first initial, or even just a scribbled name (on a clipboard), means that signatures *should* generally be presumed valid *unless* there is strong evidence offered by the objector that the signature is not valid.

16.    On the contrary, through the process at the Electoral Board which had multiple computer stations being reviewed by randomly assigned personnel, who varied from day to day, and computer station to computer station, another variable was introduced. Each reviewer used

his/her own standards, and this created variability in the results. No supervision or oversight, or quality control, was apparent at any point during the records exam. There was no feedback or re-direction to ensure that all reviewers were applying the same standard. Rather, the only direction was "it's just a judgment call", "we must complete the review as quickly as possible", and "there's no going back" to correct any mistakes, or otherwise; "Just raise it at the hearing"

17.    Fairness would dictate that such "examiner" decisions would be reviewed de novo. Instead, the process is structured to give such preference to these seat-of-the-pants determinations as conclusive in each case, barring any review unless the signature's defender can submit additional new evidence.

18.    In this light, the 345 signatures disallowed purely for signature not matching should have been reviewed *de novo*. If only one third of them are then accepted, Candidate has more than sufficient numbers. At a minimum, a handwriting expert should review the rulings, as is the case in all records exams performed by the Chicago Board of Election Commissioners.

19.    As described by the appellate court in *Board of Education v Pollastrini* 2013 IL App (2d) 120460, the lack of an objective standard renders the process' validity subject to challenge:

> We note that there is a dearth of Illinois law on the subject of how such signatures should be analyzed. However, in considering existing Illinois law as well as foreign authorities, certain standards emerge. HN9[] Substantial compliance will be found if the signature transposes the first name and middle initial (*Board of Education of Wapella Community Unit School District No. 5 v. Regional Board of School Trustees*, 247 Ill. App. 3d 555, 560 (1993)), if the middle initial is omitted (*People ex rel. Owen v. Dunn*, 247 Ill. 410, 413, 93 N.E. 305 (1910)), if a suffix, such as Junior, is omitted (*Morton v. State Officers Electoral Board,* 311 Ill. App. 3d 982, 985 (2000)), or if a common shortened version of a first [***11] name (such as Ray) is used instead of the full first name (such as Raymond) (*Bonardo v. People*, 182 Ill. 411, 424, 55 N.E. 519 (1899); *In re Nomination Petition of Gales*, 54 A.3d 855, 859 (Pa. 2012)). Substantial compliance will not be found if one uses an initial for a first or last name. *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327, 332 (Pa. 2001). Similarly, if using an initial instead of a full first name is not substantial compliance, then omitting a first or last name completely is not substantial

compliance. See *id*. Further, substantial compliance will not be found if the signature
is printed rather than in cursive as it appears on the corresponding registration form.
*State ex rel. Rogers v. Taft*, 64 Ohio St. 3d 193, 594 N.E.2d 576, 579 (Ohio 1992).

*Board of Education v Pollastrini,* 2013 IL App (2d) 120460, ¶ 16.

20.     **The shortfall is well within the margin of error, such that the Candidate's**

**numbers should suffice.** The process used by this Electoral Board hardly has the reliability that

is attributed – down to the single voter – let alone within a few hundred voter accuracy[1].

21.     The JPP database, and its administration by the Electoral Board, have not been

sufficiently authenticated, standardized, and tested to confirm a precision and accuracy for that is

required for First Amendment ballot disqualification, which turns on one signature.  Voting

machines are standardized and tested for accuracy down to a single vote.  The same standards of

reliability should be applied when voters are rejected and excluded from the nomination process.

However, no similar testing or verification process was used for the database that was created by

the Electoral Board, or used for review of signatures.

22.     Indeed, at the January 16, 2020 Hearing Board hearing, the Board initially

accepted, then rejected, the  candidate's offer of published statistics journals documenting theat

the shortfall, if it was a shortfall at all, was well within the margin of error for the most

expertised of evaluators.  Thus, for Professional Document Examiners, the margin of error is plus

or minus 3.4% (Sita, "Forensic Handwriting Examiners' Expertise for Signature Compparison",

47 J. Forensic Sci., No. 5 (2002), (Exhibit A hereto) or 6.97% "in the best result published in the

literature") Hafemann, Sabourin and Oliveira, 2016 Conference Paper: "Analyzing features

learned for Offline Signature Verification using Deep CNNS"  (Exhibirt B hereto) and   a much

---

1     The usual standard for statistical reliability is a 95% or 99% confidence level, with a
standard deviation of plus or minus 5%.  The asserted shortfall (108 signatures out of 9,555
presented, or 5,050 required) is well within a 1-2% margin of error if actually analyzed on a
statistically proven basis, and should be accepted as sufficient.

larger bracket +/- 19.3% for a control group resembling the Cook County examiners(Sita).

23.     Where the Candidate is within 108 signatures of the 5,050 minimum, particularly when almost 10,000 signatures were submitted, precision and accuracy are of paramount importance.  Despite the unreliability of the process used to review voter signatures, Candidate has nonetheless demonstrated a sufficient modicum of support from the voters who wish to see the candidate of their choice on the ballot – even under the Electoral Board's count, Candidate has almost 5,000 signatures.

24.     The alleged difference of 108 signatures (below 5,050) is within the margin of error of the unstandardized and not statistically analyzed process that was used.  Without reliability and authentication of the process, and standardization of the review, it would not be appropriate to discount almost 5,000 voters, and prevent their nominated candidate from appearing on the ballot.

**25.    C.        <u>Records Exam improperly shifts burden to Candidate.</u>**

26.     The Illinois appellate court confirmed that a candidate's nomination papers are deemed valid absent an objection that is in conformity with the requirements of the Election Code. See *Druck v. Illinois State Board of Elections*, 387 Ill. App.3d 144 (2008). The presumption then should be nomination papers and all signatures thereon are ***valid***.

27.     This Electoral Board and the Chicago Electoral Board have recognized the strong First Amendment ballot access rights of candidate to seek elected office, and of the petition signers–voters to nominate the candidate of their choice, and have historically resolved doubts in favor of ballot access.  See e.g. *Seskind v. Levin*, 94-EB-REP-8 (Chicago Electoral Board 1994).

28.     It is "the unique province of the objector" to "raise issues [and] objections" to a candidate's petition and supporting papers, which cannot be amended or expanded. *Mitchell v. Cook County Officers Electoral Board,* 399 Ill.App.3d 18, 27 (1st  Dist. 2010). Similarly, the

Objector bears the burden of proof by a preponderance of the evidence. *Carlasare v. Will County Officers Electoral Board,* 2012 IL App (3d) 120699, ¶ 15; *Hagen v. Stone,* 227 Ill. App. 3d 388, 390 (1995).

29. Where an objector fails to meet his burden of proof, an objection should be overruled and dismissed, and the candidate's name placed upon the ballot. See e.g. *Solomon v. Scholefield*, 2014 IL App (1st) 150685 and *Mitchell v. Cook County Officers Electoral Board,* 399 Ill.App.3d 18, 27 (2010).

30. The records examination concluded on Saturday December 28, 2020 at approximately 1:15PM. According to the Electoral Board's rules, a Rule 8 motion listing all rulings to be reviewed was due to Sunday December 29, 2020 at approximately 1:15PM. Candidate requested a short extension to file his Rule 8 motion to Monday December 30, 2020 at 5:00pm but this request was denied, and the hearing examiner went on to then schedule a disclosure/exchange of all Rule 8 documents for Jan. 3, 2020 and the Rule 8 evidentiary hearing for Jan. 6, 2020 at 10:00 am. No consideration was given for the weekend completion of the records exam, or the intervening New Years Day holiday.

31. The shortened and accelerated schedule was not revised, despite Candidate's request to schedule the Rule 8 evidentiary hearing for January 10, 2020 (a date available to both parties) which was denied.

32. Despite the foregoing discussed inherent lack of precision in the records examination results, the Electoral Board's rules then shifted the burden back to Candidate, coupled with an unreasonably shortened time for doing so. This is directly contrary to the presumptions of validity of all nomination papers, and the affidavits of circulators that attested the signatures gathered. The shifting of the burden to Candidate to "prove up" his voter signatures and voter registrations, within a shortened time period creates a significant obstacle to

ballot access, that was never contemplated by the Constitution, or the Election Code. The obstacle is created by the Electoral Board and its rules, which are "capable of repetition, yet evading review."

**33.   D.      <u>Strict and rigid standard for voters is inconsistent with voting rights.</u>**

34.     Voters are able to register to vote and immediately cast their vote in Illinois at polling locations shortly before an election. Even on election day Illinois allows same-day voter registration and voting. 10 ILCS 5/4-50. Even if a voter is not at the correct precinct, or some other issue cannot be cleared up by the election judges, that voter is eligible to cast a provisional ballot, and thereafter corroborate that ballot with an affidavit and/or other evidence, to allow the vote to be counted.

35.     The records exam process instead performs a strict review whether the voter was registered on a specific (undisclosed) date, and does not review voter address changes to confirm whether the voter moved during the petition gathering time. There's no ability for a voter to even know, or be notified, if a signature is rejected by the Electoral Board's comparison process, let alone the ability for a voter to come forward and verify or amend the voter registration.

36.     The Rule 8 "rehabilitation" is a theoretical option that in reality is difficult if not impossible to use, particularly with a larger volume nomination petition, expedited proceedings, hearing examiner refusals to allow reasonable extensions, and the difficulty of obtaining affidavits that must be notarized (rather than verified pursuant to Section 1-109 of the Code of Civil Procedure). Even if affidavits are obtained, easily half or more could be thrown out wholesale simply because the non-expert hearing examiner decides that the signatures are not precisely matching between the affidavit, petition signature, and voter registration signature clip. See *Fritchey v. Romanelli*, 08-EB-WC-37 (Chicago Electoral Board 2007), affirmed, Cir. Ct. Cook Co, No. 2007 COEL 0065 (holding that affidavits are not entitled to "*prima facie* validity"

and that a counter-affidavit is not the only means by when an affidavit can be contradicted; an affidavit may be contradicted by other documentary evidence and in the case at bar, the hearing officer weighed the evidence in support of sustaining the objections against the affidavits and found that most of the objections were properly sustained by the Board's staff members and handwriting expert) affirmed without a decision, *Romanelli v. Fritchey*, 378 Ill. App.3d 1125 (2008).

37.     In no other venue would affidavits, sworn to before a notary public, be thrown out without any evidence of impropriety, and ***solely*** based on ***argument of counsel*** that the voter signatures were not closely enough matched duplicates, and despite corroborating testimony of witnesses who observed the affidavit gathering and signatures from a voter and notary.  Clearly this is a theoretical world divorced from reality, relying upon the willing suspension of disbelief.

38.     Similarly inflexible is the non-expert signature comparison, using only a scanned/digitized signature from a voter registration card (from some unknown date) but not the entire original voter card.  The two election authorities have additional exemplars of voter signatures that are collected at every election when the voter signs a "ballot application" but such signatures were not produced or used in the comparison.  The technology has been available for at least a decade, if not longer, to gather and link ballot application signatures for voters, and to provide additional and more recent exemplars. These additional exemplars were not used. alify

39.     **III. Disqualifying candidates whose numbers are within the statistical margin of error is a violation of First Amendment rights..**

40.     Regardless of the process' questionable validity, plaintitff's signatures were within the margin of error for most expertised professional Document Examiners.

41.     As described in the two attached exhibits[2], articles from professional statistics

---

[2] Sita, Forensic Handwriting Examiners' Expertise for Signature Comparison, 47 J. Forensic Sci., No. 5, Sept2002.

journals,  signature identification by Professional Document Examiners have a margin of error of at least 2.74 to 6.97 percent, while the control group (average people) have a documented error rate of over nineteen percent!  (Sita)  Accordingly, plaintiff krislov's 4952 signatures   are 98.05% of, and well within even the professionals' margin of error for 5050 signatures, and should have been accepted on the ballot.

42.    Indeed, at the hearing, Krislov offered these articles from professional statistical journals in order to show that fact, and was initially approved to submit them, but ultimately rejected.


## COUNT 1-42 USC 1983

43.    Plaintiffs restate the foregoing paragraphs.

44.    . The Board's decision striking Candidate Krislov from the March 17, 2020 primary ballot violates both his and his supporters First Amendment Ballot access rights.


## COUNT II- 10 ILCS  5/10

45.    Plaintiffs restate the foregoing paragraphs.

46.    Illinois law provides a cause of action for judicial review of the Hearing Board's decision:

```
 (10 ILCS 5/10-10.1) (from Ch. 46, par. 10-10.1)
   Sec. 10-10.1. (a) Except as otherwise provided in this Section, a
candidate or objector aggrieved by the decision of an electoral board may
secure judicial review of such decision in the circuit court of the county in
which the hearing of the electoral board was held. The party seeking judicial
review must file a petition with the clerk of the court and must serve a copy
of the petition upon the electoral board and other parties to the proceeding
by registered or certified mail within 5 days after service of the decision
of the electoral board as provided in Section 10-10. The petition shall
```

---

And

Hafemann, Sabourin and Oliveira, Analyzing features learned for Offline Signature Verification using Deep CNNs, (2016)

11

```
contain a brief statement of the reasons why the decision of the board should
be reversed. The petitioner shall file proof of service with the clerk of the
court. No answer to the petition need be filed, but the electoral board shall
cause the record of proceedings before the electoral board to be filed with
the clerk of the court on or before the date of the hearing on the petition
or as ordered by the court.
    The court shall set the matter for hearing to be held within 30 days
after the filing of the petition and shall make its decision promptly after
such hearing.
    (b) An objector or proponent aggrieved by the decision of an electoral
board regarding a petition filed pursuant to Section 18-120 of the Property
Tax Code may secure a review of such decision by the State Board of
Elections. The party seeking such review must file a petition therefor with
the State Board of Elections within 10 days after the decision of the
electoral board. Any such objector or proponent may apply for and obtain
judicial review of a decision of the State Board of Elections entered under
this amendatory Act of 1985, in accordance with the provisions of the
Administrative Review Law, as amended.
(Source: P.A. 96-1008, eff. 7-6-10.)
```

47.     Defendants actions striking Krislov from the ballot should thus be reversed.

WHEREFORE, Plaintiffs respectfully assert that the Defendants' actions in striking

Krislov's name from the ballot violate the First Amendment rights of the Candidate and his

supporters, because  the process is fundamentally deficient, the database created by and used

against the Candidate by the Electoral Board has not been properly authenticated and verified;

and regardless, the shortfall is well within any appropriate and reasonable margin of error, such

that the Hearing Board's decision removing Krislov from the ballot should be reversed, ordered

to restore Krislov's name to the March 17, 2020 ballot, and such further relief as this Court may

deem appropriate; including but not limited to ensuring  that the Cook County process corrects

these errors; and with appropriate awardable fees and costs.

Respectfully submitted:

By:     /s/ Clinton A. Krislov
Attorney for Candidate

Attorneys for Plaintiffs:

Clinton A. Krislov (clint@krislovlaw.com)
Kenneth T. Goldstein (ken@krislovlaw.com)

Christopher M. Hack (chris@krislovlaw.com)
     Krislov & Associates, Ltd.
     20 North Wacker Drive, Suite 1300
     Chicago IL  60606
         Telephone:312-606-0500
         Facsimile:312-739-1098

Andrew Finko
180 W. Washington St.
Suite 400
Chicago, IL 60602
Tel (773) 480-0616
Email: Finkolaw@fastmail.FM

### Notice of Filing & Certificate of Service

     The undersigned, an attorney, certifies that on January 21, 2020, he filed the foregoing with service by email delivery to:

 electoral.board@cookcountyil.gov,

and that a copy was emailed, and sent by registered or certified mail as well to counsel for the objectors and the Board's general counsel as follows:

| | |
|---|---|
| Steve Laduzinsky | Admin@Laduzinsky.com |
| James Nally | James.Nally@cookcountyil.gov |

                       /s/Clinton A. Krislov